UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

BABCOCK & WILCOX POWER )
GENERATION GROUP, INC., )  CASE NO. 5:14cv514
 )
   Plaintiff, )
 )
   v. )  MAGISTRATE JUDGE
 )  KATHLEEN B. BURKE
CORMETECH, INC., )
 )  **MEMORANDUM OPINION &**
   Defendant. )  **ORDER**

In this diversity action, Plaintiff Babcock & Wilcox Power Generation Group, Inc.

("B&W" or "Babcock") seeks indemnity from Defendant Cormetech, Inc. ("Cormetech") for

amounts B&W paid to a third party, Kansas City Power & Light Company ("KCP&L") pursuant

to a settlement agreement.  The matter is before the Court on a discovery dispute.  B&W has

refused to produce  communications pertaining to its settlement negotiations and mediation with

KCP&L, asserting that the federal settlement privilege recognized by the Sixth Circuit in

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)

("*Goodyear*"),  applies to those communications.  In its most recent brief, B&W has also asserted

that most of the communications are subject to an additional privilege, Ohio's mediation

privilege.[1]  For the reasons explained below, the Court finds that the federal settlement privilege

does not apply to this case but that Ohio's mediation privilege does.

---

[1]  Specifically, B&W asserts that the mediation privilege applies to documents created on
and after November 9, 2010, the date on which KCP&L told B&W it wanted to mediate.  Doc.
41, pp. 3-4.

1

## I.  Background[2]

### A.  Factual Background

B&W designs, manufactures and sells emissions control equipment and services to power plants.  Doc. 1, ¶6.  Cormetech manufactures catalysts for Selective Catalyst Reduction ("SCR") systems used by power plant operators.  Doc. 1, ¶7.  A catalyst is used to reduce nitrogen oxide, an undesirable by-product created when power plants burn coal.  Doc. 1, ¶7; Doc. 12-1, p. 2.

In December 2005, Babcock entered into a contract with KCP&L, agreeing to build an SCR system for a power station in LaCygne, Kansas ("LaCygne Power Plant").  Doc. 1, ¶8. Babcock issued a technical specification for catalyst modules to Cormetech.  Doc. 1, ¶9.  On May 5, 2006, Babcock issued to Cormetech a Purchase Order for catalysts, referencing B&W/Cormetech Standard Terms and Conditions.  Doc. 1, ¶¶10, 12.  The B&W/Cormetech Standard Terms & Conditions provided,

> Seller [Cormetech] shall defend and indemnify Buyer [B&W] against all damages, liabilities, claims, losses and expenses (including attorney's fees) arising out of, or resulting in any way from any defect in the goods or services purchased hereunder . . . .

Doc. 1-1, p. 4, § 4.  The Terms and Conditions also specified that the parties' agreement was to be governed "by the laws of the state in which Buyer is located."  Doc. 1-1, p. 6, § 14.  Since B&W's principal place of business is in Ohio (Doc. 1, p. 1, ¶1), Ohio law governs the agreement between B&W and Cormetech.

Babcock used the catalysts it bought from Cormetech to fulfill its contract with KCP&L. Doc. 1, ¶13.  The SCR process at the LaCygne Power Plant began operation in April 2007.  Doc.

---

[2]  The background facts are taken from B&W's Complaint.  Doc. 1.

1, ¶13.  On August 5, 2008, the catalysts were tested and deemed to be at the end of their useful life, well in advance of their guaranteed life of 24,000 hours of operation.  Doc. 1, ¶14.  In April 2009, KCP&L spent approximately $8.5 million replacing the catalysts with new catalysts that it obtained directly from Cormetech.  Doc. 1, ¶14.  KCP&L made a claim against Babcock, alleging that KCP&L incurred more than $15 million in costs because of the faulty catalysts.  Doc. 1, ¶16.  On or about July 18, 2013, Babcock reached a settlement with KCP&L pursuant to mediation, in which it agreed to pay KCP&L $3.5 million.  Doc. 1, ¶16.[3]

Babcock initially brought suit against Cormetech on August 3, 2012.  Doc. 1, ¶5.  The parties voluntarily dismissed the case without prejudice pursuant to a tolling agreement between them.  Doc. 1, ¶5.  On March 6, 2014, Babcock refiled its Complaint in this Court against Cormetech for breach of warranty and indemnity.  Doc. 1, pp. 4-6.  It seeks judgment against Cormetech for $3.5 million, the amount it settled for with KCP&L, plus its costs and expenses incurred in addressing and settling KCP&L's claim.  Doc. 1, pp. 5-6.

### B.  Procedural Background

On September 26, 2014, the parties filed a Proposed Stipulated Protective Order (Doc. 22) and a Proposed Agreed Order for Non-Waiver of Privileged Electronically Stored Documents of Information ("Proposed Privilege Order")(Doc. 23).  In their Proposed Privilege Order, the parties defined "privilege" to include "the federal settlement privilege being asserted by [ ] Babcock[], should the Court deem that said privilege is applicable to the within matter."  Doc. 23, p. 2.

---

[3] Cormetech did not participate in the mediation.  *See* Docs. 41, p. 6; 43, p. 4.

3

On September 30, 2014, the Court issued an Order directing the parties to jointly file a supplemental brief explaining what they meant by the term "federal settlement privilege" as used in the Proposed Privilege Order.  Doc. 26.  The parties responded, explaining that they were in dispute as to whether the federal settlement privilege is applicable to the within matter.  Doc. 27, p. 1.  Babcock asserted that it raised the settlement privilege "as it believes was established by the Sixth Circuit" in *Goodyear* and *Allen County, Ohio v. Reilly Industries, Inc.*, 197 F.R.D. 352 (N.D. Ohio 2000), "as it pertains to all discovery relating to settlement, mediation, and negotiation communications that occurred between it and [] KCP&L."  Doc. 27, p. 1.  Cormetech contended that the federal settlement privilege "did not apply to the circumstances of this case" and that, even if it did, "any privilege surrounding settlement negotiations between KCP&L and Plaintiff is inapplicable because Plaintiff is asserting a claim for indemnification and must demonstrate that the settlement between it and KCP&L was fair and reasonable."  Doc. 27, p. 2. The parties stated,

> [We] have now exhausted good-faith efforts to resolve this difference and reached an impasse. The parties respectfully request that this Court permit them to independently brief this issue in further detail, so that the case law and arguments of each party can be considered by this Court in making its determination of whether the settlement privilege is applicable to the within matter.

Doc. 27, p. 2.

Accordingly, the Court construed the parties' request as a notice of a discovery dispute pursuant to Local Rule 37.1 and instructed the parties to file briefs supporting their respective positions.  Doc. 30.  After reviewing the briefing (Docs. 31, 32), the Court conducted a telephone conference with counsel.  Doc. 38.  The Court discussed the issues raised by the parties in their briefs, attempted to facilitate an agreement amenable to all, and directed the

4

parties to confer and then file a joint status report informing the Court as to whether the parties had reached an agreement regarding discovery of the documents sought.  Doc. 38.  Specifically, the Court encouraged the parties to review the holding in *Scheurer Hospital v. Lancaster Pollard & Co.*, 2012 WL 5471135 (E.D.Mich. Nov. 9, 2012).

The parties filed a joint status report wherein Babcock proposed the following, consistent with its reading of *Scheurer Hospital*:

> (a) Plaintiff would produce (as it already has) the settlement agreement entered into between Plaintiff and third-party [KCP&L]; and

> (b) Plaintiff would likewise produce any statements or communications that would explain what claims were actually settled and for what amounts, as well as a detailed billing describing any fees charged by Plaintiff's outside counsel in representing Plaintiff as it worked towards reaching the settlement with KCP&L.

Doc. 39, p. 2.[4]  Cormetech indicated that it was unwilling to accept Babcock's proposal because it believed that the federal settlement privilege does not apply to this case and, "as no other privileges have been raised, ... there was no basis for limiting access to the documents."  Doc. 39, p. 2.  Again, the parties noted that they were unable to come to an agreement.  Doc. 39, p. 3.

On November 26, 2014, the Court held a second telephone conference.  Doc. 40.  The Court discussed, among other things, whether federal common law or state law applied to Babcock's asserted privilege.  Babcock agreed to produce a privilege log of documents withheld on the basis of the federal settlement privilege and to produce the additional documents it agreed to produce in the parties' joint status report, Doc. 39, described above.  Doc. 40.  The Court set a briefing schedule on the issue of the federal settlement privilege.  Doc. 40.  The parties timely

---

[4]  Babcock agreed to produce this information by December 16, 2014.  *See* Doc. 40, p. 1.

5

filed their briefs (Docs. 41, 43, 44)[5] and this matter is ripe for ruling.

## II.  Law and Analysis

The documents at issue contain settlement communications between Babcock and KCP&L and documents authored or created for the purpose of settlement negotiations.[6]  Doc. 41, p. 2.  Babcock argues: (1) because privilege is "procedural in nature," the federal common law settlement privilege governs; (2) the Sixth Circuit's decision in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 332 F.3d 976 (6th Cir. 2003), which recognized a federal settlement privilege, is binding in this case; (3) if Ohio, instead of federal, privilege law applies, Ohio's mediation privilege governs and affords protection of the information sought, and; (4) Babcock may not unilaterally waive any privilege because the privilege belongs to both Babcock and KCP&L.  Doc. 41, pp. 2-7.

In response, Cormetech maintains that the federal settlement privilege does not apply to this case because this is an indemnity action and because Babcock is required to prove the reasonableness of its settlement with KCP&L as an element of its claim.  Doc. 43, p. 3-4.  It argues that, without the information it seeks, it has no way of knowing what, if any, portion of the $3.5 million Settlement Agreement represented liability for its catalysts, explaining that other component parts of the SCR system   alleged tube failures, the design of the superheater and reheater, and the circulation system design   were addressed in the agreement.  Docs. 43, p. 4;

---

[5]  Cormetech filed a sealed version and a redacted version of its brief (Docs. 43, 44), which it entitled, "Brief on Settlement Privilege and Motion to Compel."  Babcock filed its privilege log under seal (Doc. 42).

[6]  Cormetech states that, based on the privilege log, 16,457 pages of documents have been withheld.  Doc. 43, p. 2.

6

32-1, pp. 3-4.  Cormetech further submits that *Goodyear* is distinguishable from the facts of this case and that Ohio's mediation privilege is "inapplicable."  Doc. 43, pp. 5-8.

### A. The Federal Settlement Privilege

#### 1. The Sixth's Circuit decision in *Goodyear*

In *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), the Sixth Circuit adopted a federal settlement privilege.  The *Goodyear* case involved a commercial dispute over rubber hoses.  Chiles made heating and snowmelt systems and purchased rubber hoses from Goodyear to use in its systems.  *Id.* at 977.  Chiles sold its systems to homeowners in Colorado.  *Id.*  One such homeowner sued Goodyear and Chiles in federal court in Colorado after the hoses failed and caused damage to his property.  *Id.*  Goodyear defended itself by arguing that the hoses failed because they were negligently installed and maintained by the homeowners while Chiles argued that the hoses were defective.  *Id.*

Prior to the Colorado lawsuit, Chiles ordered newer model hoses from Goodyear to use in its systems.  *Id.*  After the hoses failed in Colorado, however, Chiles refused to pay the contract price for the newer hoses.  *Id.* at 977-978.  Goodyear sued Chiles in federal court in Ohio for breach of contract on the new hoses; Chiles filed a counterclaim for breach of implied warranty of merchantability for the failed Colorado hoses.  *Id.* at 978.  The district court granted summary judgment to Goodyear on the breach of contract claim but denied summary judgment on the counterclaim.  *Id.*  The court held settlement negotiations on the counterclaim; it stated that the talks were confidential.  *Id.*  The case did not settle and Goodyear prevailed at trial.  *Id.*

Shortly thereafter, Chiles was interviewed in an Ohio trade paper and stated that, on the day before trial, Goodyear made it an offer to indemnify it against the Colorado homeowners if

7

Chiles agreed to assign fault with the homeowners and contractors.  *Id*.  The Ohio district court became aware of Chiles' statement; it admonished Chiles for breaching the confidentiality of the settlement negotiations and permitted Goodyear a chance to publically respond.  *Id*.  Goodyear did so, and claimed that Chiles' statement was false.  *Id*.

Meanwhile, in Colorado, the aggrieved homeowner learned of Chiles' statement and filed a motion to compel Chiles to testify about Goodyear's alleged offer.  *Id*.  The Colorado court denied the homeowner's motion, finding that it lacked jurisdiction to overrule another court's confidentiality order.  *Id*. at 979.  The homeowner then intervened in the Ohio action and moved the Ohio district court to vacate or modify its confidentiality order to permit discovery of Goodyear's statements made during its settlement negotiations with Chiles.  *Id*.  The court denied the homeowner's motion on the basis of the confidentiality of settlement talks.  *Id*.

On appeal, the Sixth Circuit affirmed the district court's ruling.  It observed, "whether communications made in furtherance of settlement negotiations are *discoverable* by litigants in another action is a matter of first impression in this Circuit."  *Id*. (emphasis in original).  The Court determined that a settlement privilege serves an important public interest and should be recognized under federal common law.  *Id*.  It explained that there is a strong public interest in maintaining secrecy with respect to matters discussed during settlement negotiations because parties otherwise would be unlikely to effectively negotiate for fear their proposals would be later used against them.  *Id*.  The Court noted that the homeowner had not identified legal authority permitting settlement communications into evidence for a purpose other than ancillary matters such as admitting that settlement talks occurred, establishing an agency relationship, and to show a change in circumstances.  *Id*. at 981.  The Court reasoned that the fact of settlement

8

negotiations could be used to address these matters without probing into the underlying communications themselves.  *Id*. at 981-982.  It observed that "permitting third-party discovery of negotiation communications would lead to other undesirable results," including depositions of "the parties' lawyers and the district court judge himself."  *Id*. at 982.  Lastly, the Court remarked that the statements made by Chiles would not lead to the discovery of admissible evidence per Fed. R. Civ. Pro. 26(b)(1) and that there was no evidence that the statements were relevant to the Colorado case.  *Id*.

### 2.  Under Fed. R. Evid. 501, state law governs the privilege in this case

Babcock relies on four cases in support of its argument that matters of privilege are procedural in nature and are governed by federal common law and the decision in *Goodyear*:

*Humphries v. Pa. R. Co.*, 14 F.R.D. 177, 180-181 (N.D.Ohio 1953); *Brookshire v. Pa. R. Co.*, 14 F.R.D. 154, 156-157 (N.D.Ohio 1953); *Scourtes v. Fred W. Albrecht Grocery Co.*, 15 F.R.D. 55, 57 (N.D.Ohio 1953); and *Panella v. Baltimore & O.R. Co.*, 14 F.R.D. 196, 197 (N.D.Ohio 1951). Doc. 41, p. 3.  All these cases predate the adoption of Fed. R. Evid. 501 in 1975.[7]  *See* Pub.L. 93-595; *see also* *Jaffe v. Redmond*, 518 U.S. 1, 8 (1996).  Rule 501 provides,

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
> • the United States Constitution;
> • a federal statute; or

---

[7]  Furthermore, these cases were in the minority even at the time they issued.  *See* 9A Fed. Prac. & Proc. Civ. § 2407 (3d ed.) ("Although there were cases that refused to apply state privileges in diversity litigation," citing *Humphries*, *Brookshire* and *Panella*, " ... the great weight of authority in the 1960's supported the proposition that for issues on which state law provided the rules of decision, federal courts should look to the statutory and decisional law of the state to determine the existence, scope, and duration of evidentiary privileges"); *see also* 23 Fed. Prac. & Proc. Evid. § 5421 (1st ed.) (explaining the history of Rule 501).

> • rules prescribed by the Supreme Court.
> *But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.*

Fed. R. Evid. 501 (emphasis supplied); *see also Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990) ("In a civil case involving claims based on state law, the existence of a privilege is to be determined in accordance with state, not federal, law[,]" citing Rule 501).

Here, the Court's jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332, and Babcock's claims, breach of warranty and indemnity, are based on state law.  Specifically, Babcock's indemnity claim is based on the Ohio Supreme Court decision *Globe Indemnity Co. v. Schmitt*, 53 N.E.2d 790 (1944).  Doc. 17, p. 15 (Babcock's brief in opposition to Cormetech's motion to dismiss).  Babcock recognizes the three-part test established in *Globe* that it must meet to prevail on its claim:

> the one seeking indemnity, after making voluntary settlement, must prove that he has given proper and timely notice to the one from who it is sought, that he was legally liable to respond, and that the settlement effected was fair and reasonable.

Doc. 17, p. 15 (quoting *Globe*, 53 N.E.2d. at 794).  Babcock concedes that it must show, by a preponderance of the evidence, that the settlement was "fair and reasonable."  Doc. 17, p. 18.

Cormetech points out that *Goodyear* was not an indemnity case and maintains that it is unable to assess whether the settlement is fair and reasonable without the information it seeks.  Doc. 43, p. 2.  It explains that B&W's counsel has stated that KCP&L's initial demand was $70 million dollars; that Babcock settled the matter for $3.5 million; and that the settlement agreement indicates that the parties' mediation addressed other issues in addition to the catalyst.  Doc. 43, p. 2 (describing that the agreement references the generator, superheater, reheater and system air-flow).

10

Babcock's brief is not responsive to Cormetech's argument.  Instead, Babcock simply recites that *Goodyear* was a diversity action that applied federal common law privilege rather than state law privilege.  Doc. 41, p. 3.  Be that as it may, the Court in *Goodyear* did not discuss why it applied federal common law to the privilege asserted.  The homeowner in *Goodyear* intervened in the Ohio action and sought discovery based on his claim in a Colorado district court under Colorado law.  332 F.3d at 979; *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1180 (D.Colo. 2002).  Here, the reasonableness of the settlement agreement is an element of Babcock's Ohio state law claim against Cormetech.  Thus, the existence of a privilege is determined in accordance with Ohio law.  *See Jewell*, 899 F.2d at 1513; Fed. R. Evid. 501. Moreover, as set forth below, at the time *Goodyear* was decided, the Ohio courts had not yet decided whether to adopt a settlement privilege.  The Ohio Supreme Court has since spoken and rejected that privilege.

### 3. The Ohio Supreme Court declined to recognize the Federal Settlement Privilege established in *Goodyear*

In *Ohio Consumers' Counsel v. Pub. Util. Comm'n of Ohio*, 856 N.E.2d 213 (Ohio 2006), the Ohio Supreme Court considered the federal settlement privilege established in *Goodyear* and declined to recognize it:

> Although federal case law such as *Goodyear* is not binding on this court with regard to interpreting the Civil Rules, it can be instructive where, as here, Ohio's rule is similar to the federal rule.  *See First Bank of Marietta v. Mascrete, Inc.* (1997), 79 Ohio St.3d 503, 508, 684 N.E.2d 38. Fed.R.Civ.P. 26(b)(1) and Ohio Civ.R. 26(B)(1) are substantially similar. We do not find *Goodyear* persuasive, however, and decline to recognize a settlement privilege applicable to Ohio discovery practice.

*Id*. at 235.

11

Under Evid. R. 501, because the Ohio Supreme Court has declined to recognize a settlement privilege, the federal settlement privilege recognized in *Goodyear* does not apply to a diversity case, such as this one, where Ohio law supplies the rule of decision.  *See Large v. Heartland-Lansing*, 995 N.E.2d 872, 884 (Ohio Ct. App. 2013) (in Ohio, privileges are narrowly construed and the party claiming the privilege bears the burden of proving that the privilege applies to the requested information, citing *Waldmann v. Waldmann*, 358 N.E.2d 521 (Ohio 1976)).

### B.  The Ohio Mediation Privilege

Babcock, for the first time in its latest brief to the Court, asserts that Ohio's mediation privilege applies and cites R.C. §§ 2710.03 and 2710.02(A)(2)-(3) in support.  Doc. 41, p. 3. Cormetech argues that the mediation between B&W and KCP&L was conducted pursuant to Missouri law; that the Ohio mediation privilege has not been applied to indemnity actions; that Babcock's privilege log does not identify the foundation for the mediation privilege; and that, per R.C. § 2710.05, the Court is required to conduct an *in camera* review of the documents in question.  Doc. 43, pp. 7-8.

### 1. Choice of law

A federal court exercising diversity jurisdiction applies the choice of law rules of the forum state.  *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (1996).  In this case, Ohio is the forum state.  Cormetech remarks, in a footnote, that the settlement agreement between B&W and KCP&L contains a choice of law provision stating that the laws of Missouri governs the agreement.  Doc. 43, p. 3.  Cormetech later states, "[n]either party to the mediation contemplated Ohio's mediation statutes....the parties believed the mediation was conducted pursuant to

12

Missouri law." Doc. 43, p. 7.

The fact that Babcock and KPC&L agreed that their settlement agreement would be governed by Missouri law does not, alone, inform as to what law governs Babcock's asserted privilege in this case. Notably, Cormetech does not advance a choice of law argument; does not assert that Missouri law should apply to the privilege in this case; and does not cite any Missouri law. Instead, Cormetech cites Ohio law and argues that the documents at issue are not protected by the privilege set forth in the Ohio Revised Code. Doc. 43, p. 8. Accordingly, the Court does not consider whether Missouri law applies to the privilege asserted here. *See Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F.Supp.2d 944, 949 (S.D.Ohio 2001) ("Since the parties have not raised [a choice of law] argument and, further, given that they have relied upon the law of Ohio, this Court will apply the law of this state," citing *ECHO Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995) ("Where neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law")).[8]

## 2. The mediation communications are protected under Ohio's Uniform Mediation Act

Babcock relies on R.C. §§ 2710.02(A)(2)-(3) and 2710.03 of Ohio's Uniform Mediation Act (the "Act") to support its asserted privilege. R.C. § 2710.02(A) provides that the Act applies to any of the following circumstances:

> (1) The mediation parties are required to mediate by statute or court or administrative agency rule or referred to mediation by a court, administrative agency, or arbitrator.

---

[8] The Court notes that Missouri also has a statute protecting communications made in connection with settlement negotiations. *See* Mo. Ann. Stat. § 435.014 (West 2014).

13

> (2) The mediation parties and the mediator agree to mediate in a record that demonstrates an expectation that mediation communications will be privileged against disclosure.
>
> (3) The mediation parties use as a mediator an individual who holds himself or herself out as a mediator, or the mediation is provided by a person that holds itself out as providing mediation.

*Id*. Babcock asserts that "it is clear from the mediation parties' documents" that Babcock and KPC&L demonstrated an expectation that the communications would be privileged against disclosure, per R.C. § 2710.02(A)(2).  Doc. 41, p. 3 n. 4.  Babcock does not provide the Court with these documents.  However, it does provide The Academy of Distinguished Neutrals Member Profile of its mediator, Jonathon B. Marks, which clearly indicates that Marks holds himself out as a mediator.  Doc. 41-2, pp. 2-3.  Accordingly, Babcock has shown that, per R.C. § 2710.02(A)(3), the Act applies to discovery in this case of communications relating to its mediation with KCP&L.

R.C. § 2710.03(A) provides that a mediation communication is privileged and not subject to discovery unless waived by a party or precluded by section 2710.04.  The mediation privilege can only be waived by agreement of both parties to the mediation.  R.C. § 2710.04(A).  Section 2710.03(B)(1) states, "a mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication."  A "mediation communication" is defined as "a statement, whether oral, in a record, verbal or nonverbal, that occurs during a mediation or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator."  R.C. § 2710.01.  Because there is no contention that both B&W and KCP&L have waived the privilege, B&W is not precluded from

14

asserting the privilege per section 2710.04 and the mediation communications are subject to the Ohio mediation privilege.

## 2. The Act's exceptions do not apply to this case

Cormetech submits that there is no case law that applies the mediation privilege to indemnification cases.  Doc. 43, p. 8.  It states, "it is simply unfair and unjust to allow [Babcock] to pursue claims for millions of dollars based on the outcome of a mediation, and then to hide the details of that very mediation."  Doc. 43, p. 8.  It is not clear whether Cormetech is stating that the Act does not by its terms apply to indemnification cases or if it believes the Court should create an indemnification exception.

R.C. § 2710.05(A) provides express exceptions to the Act.  These include the settlement agreement itself and any communication that: is available to the public; contains a threat; is used to plan or conceal a crime; or is sought to prove a claim of professional misconduct.  *See id*. There is no exception in section 2710.05 for indemnification cases and the Court declines to create one.  *See* 85 Ohio Jur. 3d Statutes § 221 (the rule of statutory construction *expressio unius est exclusio alterius* provides that when a statute specifies an exception to a general rule the statute is read to exclude other exceptions not specified, citing *Thomas v. Freeman*, 680 N.E.2d 997 (Ohio 1997)).

Next, Cormetech requests that, pursuant to R.C. § 2710.05, the Court conduct an *in camera* review of the applicable documents.  Doc. 43, p. 8.  Section 2710.05(B) provides,

> There is no privilege under section 2710.03 of the Revised Code if a court, administrative agency, or arbitrator finds, after a hearing in camera, that the party seeking discovery or the proponent of the evidence has shown that the evidence is not otherwise available, that the disclosure is necessary in the particular case to prevent a manifest injustice, *and* that the mediation communication is sought or

offered in either of the following:

> (1) A court proceeding involving a misdemeanor;
>
> (2) Except as otherwise provided in division (C) of this section, *a proceeding to prove a claim to rescind or reform or a defense to avoid liability on a contract arising out of the mediation*.

*Id*. (emphasis supplied).  Cormetech is not proving a defense to avoid liability on a contract arising out of the mediation.  The contract arising out of the mediation    the settlement agreement    is between Babcock and KCP&L; Cormetech is not a party to that agreement.  Accordingly, the Court need not conduct a hearing *in camera* per R.C. § 2710.03(B)(2).  *See City of Akron v. Carter, 942 N.E.2d 409, 415-416 (Oh. Ct. App. 2010)* (because the City did not seek mediation communications in a proceeding to prove a claim or defend against liability on a contract arising out of the mediation, remand for the trial court to hold an *in camera* hearing was unnecessary).[9]

Finally, Cormetech submits, without citing legal authority, that Babcock's privilege log "fails to identify the foundation for the mediation privilege."  Doc. 43, p. 8.  It states, "there appear to be numerous documents that were prepared within [Babcock] and not transmitted to a mediator, as well a[s] [Babcock] internal emails and correspondence."  Doc. 43, p. 8.  The Act does not define "mediation communications" to exclude internal communications.  *See* R.C. §

---

[9]  Although Cormetech states that it cannot test the reasonableness of the settlement agreement without knowing the subject matter of the negotiations between Babcock and KCP&L, it also asserts, "the B&W Root Cause Analysis ("RCA"[]) prepared on February 27, 2009, long before any mediation, exonerated Cormetech's catalyst from any blame in the problems suffered at the LaCynge Plant. The RCA found that the way in which KCP&L operated the plant was the cause of the problems."  Doc. 43, p. 2.  If, as Cormetech contends, the RCA fully exonerates Cormetech from blame, it is not clear why Cormetech requires other information to defend itself in this action.

16

2710.01(B) ("'Mediation communication' means a statement, whether oral, in a record, verbal or nonverbal, that occurs during a mediation *or is made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator*.") (emphasis added).

Babcock asserts Ohio's mediation privilege for entries dated on and after November 9, 2010, the date on which KCP&L informed Babcock that it wished to pursue mediation.  Doc. 41, p. 4.  Furthermore, Babcock's privilege log meets the requirements of Fed. R. Civ. Pro. 26(b)(5) (party claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed    and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").  Each email entry in Babcock's privilege log includes the sender, recipient(s), date and time along with a brief description and a statement of what privilege is being asserted.  *See* Doc. 42.  Each document in the privilege log contains the title and date of the document along with a brief description and a statement of what privilege is being asserted.  *See* Doc. 42.  Cormetech provides no challenge to any specific entry in the seventy-five page privilege log.  *See Lincoln Elec. Co. v. Nat'l Standard, LLC*, 2012 WL 1424777, at * 1 (N.D. Ohio, April 24, 2012) (denying motion to compel, noting that the party provided "no individual basis for challenging the designation of any specific entry").  The information contained in Babcock's privilege log is sufficient to satisfy the requirements, "absent some specific indication that necessary information has been withheld or is inaccurate." *Id*. (citing Moore's Federal Practice (3rd ed.), Vol. 6, § 26.47[1][b]; 1993 Advisory Committee Notes to Rule 26(b)(5)).  Accordingly, Cormetech's argument that Babcock's privilege log fails to identify the foundation for its asserted mediation

17

privilege is without merit.

### III.  Conclusion

For the reasons explained above, the Court finds that the federal common law settlement privilege does not apply to this case but that Ohio's Uniform Mediation Act does protect the information sought by Cormetech that is dated on or after November 9, 2010.  Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Cormetech's motion to compel discovery of documents withheld by Babcock (Doc. 43).  Babcock is ORDERED to produce to Cormetech on or before February 6, 2015, the documents listed on its settlement and mediation privilege log that are dated prior to November 9, 2010.


IT IS SO ORDERED.


Dated: January 23, 2015

KATHLEEN B. BURKE
U.S. Magistrate Judge

18